**MCGUIREWOODS LLP**
Andrew W. Russell, Esq. (SBN 280669)
Email: arussell@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

Joel H. Spitz (*admitted Pro Hac Vice*)
Email: jspitz@mcguirewoods.com
Michael R. Phillips (*admitted Pro Hac Vice*)
Email: mphillips@mcguirewoods.com
Katharine P. Lennox (*admitted Pro Hac Vice*)
Email: klennox@mcguirewoods.com
77 West Wacker Drive, Ste. 4100
Chicago, IL 60601-1818
Telephone: 312.849.8100
Facsimile: 312.849.3690

Attorneys for Defendants and Counter-Claimant
DLC, AN ADDISON GROUP COMPANY; ADDISON PROFESSIONAL
FINANCIAL aka APFS STAFFING, INC.; and APFS LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAK GILINSKY, an Individual,<br><br>    Plaintiff,<br><br>v.<br><br>DLC, AN ADDISON GROUP COMPANY; ADDISON PROFESSIONAL FINANCIAL aka APFS STAFFING, INC.; AND DOES 1 to 10, Inclusive<br><br>    Defendants.<br><br>APFS LLC,<br><br>    Counter-Claimant,<br><br>v.<br><br>DAK GILINSKY, an Individual,<br><br>    Counter-Defendant. | CASE NO. 2:24-cv-04407-RAO<br><br>**DEFENDANT AND COUNTER-CLAIMANT APFS LLC'S COUNTERCLAIM FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION; AND RESTITUTION** |

Defendant and Counter-Claimant APFS LLC ("APFS") upon knowledge as to itself, and otherwise upon information and belief, hereby alleges for its Counterclaim against Plaintiff and Counter-Defendant Dak Gilinsky ("Gilinsky") as follows:

## JURISDICTION AND VENUE

1. APFS is, and at all times relevant herein was, a limited liability company whose sole member is APFS Staffing, Inc. d/b/a Addison Group ("Addison Group"). Addison Group is, and at all times relevant herein was, incorporated in Delaware and has its principal place of business and corporate headquarters in Chicago, Illinois. Illinois is also where a majority of the officers of Addison Group reside, and Addison Group directs, controls, and coordinates the majority of its activities from Illinois. Additionally, a majority of the executive and administrative functions of Addison Group are performed in Illinois. Thus, APFS was and is a citizen of the States of Delaware and Illinois for purposes of determining minimum diversity jurisdiction. 28 U.S.C. § 1332(d)(2).

2. Gilinsky is now, and was at the time of the filing of his Complaint in this action, a citizen of the State of California, residing in Los Angeles County, California. *See* Complaint, ¶ 2.

3. This Court has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367(a) because APFS's claims herein against Gilinsky are compulsory under Federal Rule of Civil Procedure 13(a)(1). They arise out of the same transaction or occurrence that is the subject matter of Gilinsky's Complaint and from the same nucleus of operative facts.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the acts and practices complained of herein occurred in substantial part in this District, and because there is a pending action in this District which is substantially related to this Counterclaim.

## COMMON ALLEGATIONS
## FOR ALL CAUSES OF ACTION

5. At the time of the events giving rise to this action, Gilinsky was employed by APFS as a Managing Director of Addison Group's DLC business unit until his employment was terminated on or about February 21, 2024.

6. On February 21, 2024, APFS paid Gilinsky a bonus of $50,000 for the 2023 fiscal year (the "2023 Performance Bonus") in accordance with his 2023 Compensation Plan based upon Gilinsky's repeated representations, including his written representations to Addison Group's Chief Executive Officer, Thomas Moran, in February 2024, that he had met the goal of achieving 100% of the gross profit budget ("GPB") of $3,246,114 for the DLC Orange County ("DLC-OC") market.

7. APFS paid the 2023 Performance Bonus to Gilinsky before the time that it paid bonuses to other executives and despite the fact that Gilinsky's 2023 Compensation Plan stated that any bonus amount earned "will be remunerated after the audit of the 2023 financial statements or at CEO discretion" and APFS had not yet conducted an audit of the 2023 financial statements for the DLC business unit.

8. On April 16, 2024, following Gilinsky's termination of employment, Gilinsky filed this lawsuit against Addison Group for alleged employment-related claims, in the Los Angeles County Superior Court, matter styled as: *DAK GILINSKY, an Individual v. DLC, AN ADDISON GROUP COMPANY; ADDISON PROFESSIONAL FINANCIAL aka APFS STAFFING, INC.; AND DOES 1 to 10, Inclusive*, and which was timely removed to federal court on May 28, 2024 (the "*Gilinsky* Action").

9. Following Gilinsky's termination and the filing of the *Gilinsky* Action, APFS and Addison Group have had the opportunity to review the GPB credited to DLC-OC for 2023 and whether Gilinsky was entitled to the 2023 Performance Bonus under the terms of his 2023 Compensation Plan.

10. Not only did this review confirm that DLC-OC did not meet its full GPB

for 2023 and therefore Gilinsky did not earn and/or qualify for the entire 2023 Performance Bonus which APFS paid to him on the date of his termination, but it has revealed that Gilinsky had engaged in a series of manipulations of DLC-OC's financial results in order to achieve the GPB.

### DLC's Method for Allocating Revenue to Markets

11.   Addison Group's DLC business unit ("DLC") is a consulting business that places consultants with expertise in finance and accounting on projects for DLC clients.

12.   At the relevant time, DLC operated primarily in four geographic markets: San Francisco ("SF"), Los Angeles ("LA"), Orange County ("OC') and Chicago.  However, DLC occasionally performed projects for clients in other geographic markets.

13.   During 2023, DLC used Salesforce as its customer relationship management system.  All revenue that DLC recognized was assigned in Salesforce to one of the above four markets. Addison Group used the revenues recorded in Salesforce to generate DLC's financial results.

14.   When DLC obtained a new client, the Client Services Director ("CSD") was responsible for assigning that client to a geographic market, using a drop-down menu which identified the market as SF, LA, OC, or Chicago.  Only DLC's Vice President of Finance or its Manager of Business Process Improvement, who oversaw the Salesforce system, could override this assignment.

15.   Each CSD was also assigned to a market in Salesforce.  When a CSD sold a project, by default the revenues from the project were allocated in Salesforce to the market where the CSD was assigned, regardless of where the project was to be performed.

### Gilinsky's 2023 Compensation Plan

16.   Gilinsky's compensation for 2023 was governed by his 2023 Compensation Plan, which Gilinsky signed on March 23, 2023.

17. Under his 2023 Compensation Plan, Gilinsky was eligible to earn a bonus if DLC-OC achieved at least 90% of its GPB of $3,246,114 during 2023. The amount of the potential bonus increased based upon the percentage of GPB achieved. If DLC-OC achieved 100% of its GPB, Gilinsky was eligible for a potential bonus of $50,000. If DLC-OC achieved above 90% of its GPB, Gilinsky was eligible for a bonus of either $30,000 or $40,000 depending upon the percentage of GPB achieved.

18. If DLC-OC exceeded 100% of GPB in 2023, Gilinsky was also eligible for an additional incentive of up to $25,000 at the CEO's discretion.

19. Gilinsky's 2023 Compensation Plan did not tie his bonus to a specific GPB goal for the LA market.

## Gilinsky's Manipulation of Revenue Allocation

20. Although Gilinsky's previous bonuses had also been tied to GPB for DLC-OC, the 2023 GPB was significantly higher than in previous years. Additionally, the LA and OC markets faced significant challenges in 2023 that resulted in projects being ended early and reductions in the number of DLC consultants in the markets.

21. In order to achieve the ambitious GPB goal for DLC-OC in 2023, Gilinsky embarked upon a scheme to effectively shift revenues from the LA market and other markets to the OC market.

22. Gilinsky accomplished this shifting of revenue from LA to OC through several means throughout 2023.

23. First, Gilinsky designated at least one client for which he was the CSD as located in the OC market when in fact that client had no presence in that market and was located in the LA market. Gilinsky wrongly designated this client as being located in the OC market by using a drop-down menu in Salesforce that CSDs could use to code a new client to a market. This allowed Gilinsky to justify allocating projects generated for that client from the LA market to the OC market.

24. Second, at various points throughout 2023 including but not limited to

on June 20, 2023, August 10, 2023 and in or about October 2023, Gilinsky repeatedly requested that other DLC employees, including but not limited to Jim Little and Beth Bohl, use an override mechanism in Salesforce to allocate revenues generated by CSDs assigned to the LA market or other markets to the OC market on the basis that the projects were to be performed in OC. DLC agreed in some cases to re-allocate projects from LA to OC, including specifically two large projects that were re-allocated from LA to OC in or about October 2023, but refused to re-allocate others because they had no apparent connection to OC.

25. Gilinsky, however, did not request an override for projects sold by CSDs assigned to OC which were to be performed in LA or other markets. As a result, in 2023, revenue from projects sold by CSDs assigned to OC which were performed primarily or entirely in Los Angeles County were nonetheless allocated to the OC market.

26. Third, beginning in early 2021, Gilinsky requested that DLC establish an override mechanism that allowed work which his LA sales team sold in OC to be coded as OC revenue. However, under the mechanism that Gilinsky requested, when his OC sales team sold work in LA, the revenue was still coded to the OC market. As Gilinsky was aware due to his role in establishing the mechanism, this created a one-way flow of revenues from LA to OC.

27. Fourth, Gilinsky caused revenues from projects sold by CSDs assigned to the LA market which were to be performed outside of one of DLC's four established markets to be allocated to the OC market, despite having little to no connection to that market, either by requesting an override, by coding the client to OC in Salesforce or by virtue of the accounting being assigned to a CSD assigned to OC.

28. These actions by Gilinsky caused a substantial amount of revenues and gross profit to be shifted from the LA market to the OC market in 2023, materially affecting financial results that year on a market basis.

29. Indeed, the end result of Gilinsky's manipulations was that revenue from

clients with locations in Los Angeles, Northridge, Studio City, Marina del Rey and La Mirada, as well as Atlanta, Nevada and Salt Lake City, were considered OC revenue.

30. Gilinsky has admitted he requested that revenue be reallocated from LA to OC during 2023 and was unable to provide coherent explanations as to why certain projects that appear to have been performed in LA were classified as OC revenue.

31. As a result of Gilinsky's manipulations of revenue, based upon DLC's year-end financial results, the OC market achieved a gross profit of $3,482,466, thus exceeding its GPB.

32. However, when DLC revenues are allocated according to either the market to which the CSD was based or the client's physical location, gross profit for the OC market is reduced from between $800,000 to $1,200,00. Thus, the DLC-OC market did not reach its 2023 GPB when revenues are properly allocated between the markets.

33. In February 2024, Gilinsky represented to APFS, specifically its Chief Executive Officer Thomas Moran, that DLC-OC had not only met, but exceeded the GPB for 2023.

34. Among other representations, Gilinsky stated in an email to Moran dated February 2, 2024, "We achieved GP of $3,482,466 against a target of $3,246,114. We exceeded GP goal in OC by $236,351 or 7.3%." Gilinsky also stated in an email to Moran dated February 19, 2024, "it is clear that the company owes me a bonus."

35. Gilinsky also represented to his supervisor, Financial Transformation Group Leader Manuel Azuara, in verbal conversations on February 19 and 20, 2024 that he had earned a bonus based upon the performance of the OC market.

36. Gilinsky knew or should have known that these statements were untrue given his above-discussed manipulative conduct and that the OC market had achieved GPB only by his shifting revenues from LA and other markets to OC.

37. Nevertheless, based upon Gilinsky's false representations to APFS, that

the OC market had not only met but exceeded the GPB in 2023 and that he had earned a bonus based upon the performance of the OC market, Addison Group paid Gilinsky his 2023 Bonus in the amount of $50,000.

## FIRST CAUSE OF ACTION
## INTENTIONAL MISREPRESENTATION

38. APFS re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 37 above.

39. As detailed above, Gilinsky represented to APFS, including in written statements made to Mr. Moran on February 2, 2024 and in February 2024 more generally as well as in his communications with Mr. Azuara in early 2024, that DLC-OC had exceeded 100% of its GPB for 2023. In fact, DLC-OC did not meet or exceed 100% of its GPB.

40. Gilinsky knew that certain of the revenues which were improperly credited to OC in fact should have been allocated to the LA market or other DLC markets and therefore knew that his representation was either false or made recklessly and without regard for its truth.

41. Gilinsky made the aforesaid misrepresentations about financial performance of the OC market with the intent to induce APFS to pay him the 2023 Performance Bonus which he did not actually earn and to further pay him a discretionary bonus.

42. APFS reasonably and justifiably relied on Gilinsky's representations in paying him $50,000 for his 2023 Performance Bonus. At that time, Addison Group did not know that Gilinsky's representations were false and believed they were true based upon the information available at that time, specifically, the unaudited 2023 financial results that had been impacted by Gilinsky's manipulations of revenue.

43. Additionally, Gilinsky coerced and attempted to pressure APFS to pay his 2023 Performance Bonus immediately by threatening litigation.

44. Insofar as APFS had not yet audited the financial results of DLC when

Gilinsky attempted to coerce and pressure APFS to pay his bonus and when APFS did pay Gilinsky his 2023 Performance Bonus, APFS's reliance on Gilinsky's representations was reasonable.

45. As a direct and proximate result of Gilinsky's fraudulent and intentional misrepresentation, APFS has incurred damages in the sum or sums to be proven at trial, including the $50,000 bonus that APFS paid to Gilinsky, or a portion thereof, and all other compensatory damages.

46. APFS's reliance upon Gilinsky's misrepresentation was a substantial factor in causing APFS harm.

47. The aforementioned conduct of Gilinsky was fraudulent and deceitful, and constituted intentional misrepresentations with the intention of depriving APFS of property or otherwise causing it injury so as to justify an award of exemplary and punitive damages.

## SECOND CAUSE OF ACTION
## NEGLIGENT MISREPRESENTAITON

48. APFS re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 47 above.

49. Gilinsky represented to APFS that DLC-OC had exceeded 100% of its GPB for 2023. In fact, DLC-OC did not meet or exceed 100% of its GPB.

50. Even if Gilinsky honestly believed that DLC-OC had met its GPB for 2023, he had no reasonable grounds to believe that the representation was true when he made it because he knew that certain of the revenues which has been improperly allocated to OC in fact should have been allocated to the LA market or other DLC markets.

51. Gilinsky made the misrepresentation with the intent to induce APFS to pay him the 2023 Performance Bonus which he did not actually earn and to further pay him a discretionary bonus.

52. Insofar as APFS had not yet audited the financial results of DLC, its

9
DEFENDANT AND COUNTER-CLAIMANT APFS LLC'S COUNTERCLAIM FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION; AND RESTITUTION

reliance on Gilinsky's representations was reasonable.

53. As a direct and proximate result of Gilinsky's misrepresentation, APFS has incurred damages in the sum or sums to be proven at trial, including the $50,000 bonus that APFS paid to Gilinsky, or a portion thereof, and all other compensatory damages.

54. APFS's reliance upon Gilinsky's misrepresentation was a substantial factor in causing APFS harm.

### THIRD CAUSE OF ACTION

### RESTITUTION

55. APFS re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 54 above.

56. APFS paid Gilinsky a $50,000 bonus based upon its understanding that DLC-OC had met its GPB for 2023.

57. In fact, DLC-OC did not meet its GPB for 2023. Nevertheless, Gilinsky has retained the full bonus that APFS paid to him.

58. Gilinsky thus received his bonus through mistake, fraud, coercion, or request and has been unjustly conferred a benefit to which he is not entitled.

59. Based on the facts alleged herein and as proven at trial, in equity and good conscience, it would be unconscionable and otherwise unjust for Gilinsky to enrich himself with unearned wages at the expense of APFS.

60. APFS has incurred damages in that it was induced to pay Gilinsky unearned wages, by reason of which APFS has been damaged in an amount to be proven at trial.

61. To the extent that APFS lacks an adequate remedy at law to recover these amounts, it may recover them under an equitable theory of restitution.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counter-claimant APFS LLC prays that this Court grant the following relief:

1. For damages in an amount to be proven at trial;

2. For punitive and exemplary damages;

3. For costs of suit herein incurred and interest due; and

4. All other and further relief as the Court may deem proper.

DATED: January 9, 2025          McGuireWoods LLP

                                By: /s/ Michael R. Phillips
                                    (admitted pro hac vice)
                                    Michael R. Phillips, Esq.
                                    (admitted pro hac vice)
                                    Andrew W. Russell, Esq.
                                    Joel H. Spitz, Esq.
                                    (admitted pro hac vice)
                                    Katharine P. Lennox, Esq.
                                    (admitted pro hac vice)

                                    Attorneys for Defendant / Counter-claimant APFS LLC

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Cook, State of Illinois. I am over the age of eighteen years and not a party to the within action; my business address is 77 West Wacker Drive, 41st Floor, Chicago, Illinois 60601.

On January 9, 2025, I served the following document(s) described as **DEFENDANT AND COUNTER-CLAIMANT APFS LLC'S COUNTERCLAIM FOR INTENTIONAL AND NEGLIGENT MISREPRESENTATION; AND RESTITUTION** on the interested parties in this action on the following:

| | |
|---|---|
| Michael H. Leb | Patricio T.D. Barrera |
| LEB DISPUTE RESOLUTIONS | BARRERA & ASSOCIATES, APC |
| 1946 Pasadena Glen Road | 2298 E. Maple Avenue |
| Pasadena, CA 91107 | El Segundo, CA 90245 |
| michael@lebdr.com | barrera@BAattorneys.com |
| | rachel@BAattorneys.com |

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING**: I electronically filed the foregoing document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees. (C.C.P. § 1010.6)

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 9, 2025, at Chicago, Illinois.

*/s/ Michael R. Phillips*
Michael R. Phillips